**UNITED STATES of America ex rel. Chester Otto WEGER, Petitioner,**

v.

**David BRIERTON, Warden, Joliet Correctional Center, and Allyn Sielaff, Director of Corrections, Defendants.**

No. 75 C 3686.

United States District Court, N. D. Illinois, E. D.

June 17, 1976.

John L. Barton of Barton & Barton, Marseilles, Ill., for petitioner.

Raymond McKoski, Asst. Atty. Gen., State of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is respondents' motion to dismiss a petition for habeas corpus brought by a prisoner currently serving a life sentence. Petitioner complains of certain alleged errors in his murder trial in 1961. We will treat respondents' motion, accompanied by evidentiary matter, as one for summary judgment and grant it.

■ Petitioner's first contention is that several confessions which he made and which were introduced at his trial were involuntary. This contention was advanced in the appeal from his conviction and rejected by the Illinois Supreme Court in *People v. Weger*, 25 Ill.2d 370, 185 N.E.2d 183 (1962).[1] The court's determination was based on evidence introduced in the trial court's hearing on petitioner's motion to suppress the confessions. Under 28 U.S.C. § 2254(d), there is a presumption of correctness of this decision unless one of eight enumerated conditions is present.[2] Since

---

1. Although the trial court applied the wrong legal standard in ruling that the confessions were voluntary, the Supreme Court, in affirming the conviction, applied the correct standard to the facts adduced at the hearing.

2. 28 U.S.C. § 2254(d) reads:
   (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the ap-

plicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
   (1) that the merits of the factual dispute were not resolved in the State court hearing;
   (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

none of them is, petitioner has the burden of establishing by convincing evidence that the state court's determination was not supported by the record. *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). Moreover, since the material facts were adequately developed at a full and fair hearing before the state court, no new hearing in this court is required. *United States ex rel. Kirby v. Sturges*, 510 F.2d 397 (7th Cir.), *cert. denied*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

The Illinois Supreme Court determined after reviewing the entire record that, since petitioner confessed immediately after a tearful meeting with his family, it was most likely that his confession was triggered by that encounter and not by police coercion. Therefore, the confession was held to be voluntary.

■ We have reviewed the same record, on file with this court, and conclude that the state court's decision was amply supported by the facts. The only coercive aspects to the police questioning, according to petitioner's testimony, were the rough tone of voice of the questioners, insulting remarks about petitioner's wife and, primarily, threats that petitioner would go to the electric chair if he did not confess. These allegations of coercion were held by the court not to have triggered the confession:

> "Even if defendant's testimony that threats of the electric chair and promises of a less severe punishment were made earlier in the evening and after the departure of his family is accepted as true, the possibility that these threats and promises suddenly became effective to produce a confession is most remote. Similar earlier threats had not had any effect, and those made before the arrival of the family were apparently not considered important enough to mention to his father when they were alone. The defendant's suggestion that he confessed because he became enraged at remarks indicating that his wife was untrue is not clear nor its role in producing his confession apparent. We conclude that the spontaneous appeal of his mother must have been the factor that triggered the confession and that it was not involuntary." 185 N.E.2d at 188–89.

The court's conclusions are well-reasoned and amply supported by the record.[3] Accordingly, this court finds in favor of the respondents on this issue.

(3) that the material facts were not adequately developed at the State court hearing; (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding; (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding; (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or (7) that the applicant was otherwise denied due process of law in the State court proceeding; (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

3. Apparently, the court did not regard the respondent's allegations of rough language as being substantial enough to discuss. We assume the court rejected these allegations as well, probably in part because, despite his allegation of rough language, petitioner testified that the police generally treated him well. Moreover, the court's conclusion that it was unlikely the officers' threats suddenly triggered the confession applies with equal force to the rough language.

Petitioner's second contention is that he was denied a trial by an impartial jury. In support of this contention he has advanced four reasons why his jury was biased: (1) improper influences on the jury during trial; (2) widespread pretrial publicity concerning his confessions; (3) exclusion of jurors opposed to capital punishment; (4) statements by the prosecutor to the trial jury that the grand jury had indicted petitioner after hearing testimony of witnesses.

■ The first of these allegations specifically is that the bailiff made improper statements to the jurors and the jurors read uncensored newspaper articles during the trial. This contention was raised by petitioner in his direct appeal and rejected by the Illinois Supreme Court. As with his contention concerning his confession, we find that the state court's conclusion was amply supported by the record. The allegations are based on the affidavit of only one juror and were denied by nine other jurors and both bailiffs.

The allegation concerning prejudicial pretrial publicity was raised by petitioner in a Petition for Post Conviction Relief which was denied after a hearing by the Circuit Court of LaSalle County, *Weger v. People*, No. 60–11–753 (March 17, 1969). This decision was affirmed by the Illinois Supreme Court, *People v. Weger*, No. 43641 (September 30, 1971).[4]

Petitioner has presented as an exhibit a copy of portions of the November 17, 1960, edition of The Daily News-Tribune of LaSalle County, which reported petitioner's confession. The front page contains four articles on the investigation and confession and two large photographs showing petitioner reenacting the crime for the police. An inside page contains at least five more

articles and several additional photographs. The front page banner headline reads, "Chester Weger, 21, Confesses to Starved Rock Triple Murders," and a subheadline reads, "Reenacts Brutal Slaying." The story begins, "The 'Madman of Starved Rock' is in custody today and the blackest chapter in LaSalle County history nears the final pages."[5]

Although this is the only exhibit presented to us it appears from the transcript of the state court hearing held on petitioner's Petition for Post Conviction Relief that the news coverage in the other local newspapers was similar and that petitioner's public reenactment of his crime was broadcast on television. Petitioner's trial was held less than two months after his confession, and apparently the publicity continued unabated until then.

In a series of cases the United States Supreme Court has held that a criminal defendant is entitled to a trial by jurors unprejudiced by adverse publicity in the news media and that under certain circumstances the publicity may be so pervasive that it will be presumed that no juror can free his mind of the sensational information he has read and heard outside the courtroom. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *cf. Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). In *Rideau*, the court held that a defendant could not receive a fair trial where a local television station had broadcast a film showing the defendant giving his confession to the police, even

**4.** The trial court denied the petition on the merits on the ground that the jury was not biased. The Supreme Court's affirmance did not reach the merits. Its opinion was as follows:

Defendant's conviction of the crime of murder was affirmed by this Court. (*People v. Weger*, 25 Ill.2d 370, 185 N.E.2d 183). In a post-conviction petition defendant alleged that he did not receive a fair trial because of

prejudicial publicity. Our judgment is *res judicata* and the appeal from the denial of the post-conviction petition presents no substantial question. The judgment of the Circuit Court is affirmed.

**5.** The stories concerning petitioner so dominated the front page of the newspaper that an article reporting the death of Clark Gable was pushed to the bottom of the page.

though the confession was subsequently introduced at his trial. The media coverage of petitioner's confession and reenactment of the crime in this case seems to have been comparable to the publicity in *Rideau*.

■ Our examination of the record reveals that petitioner may well have been prejudiced by pretrial media publicity. Nevertheless, we must deny his petition, without a factual hearing, because he waived any objection he may have had by not moving for a change of venue or a continuance and by not exhausting his peremptory challenges during jury selection. The reason for not moving for a change of venue was apparently his privately retained counsel's feeling that no venue could be found free from adverse publicity. There is no apparent reason, however, for the failure to ask for a continuance. Had such a motion been made, it probably should have been granted, in view of the short period between the publicity surrounding petitioner's confession and his trial.

Recently, the Supreme Court held in *Estelle v. Williams*, —— U.S. ——, 96 S.Ct. 1691, 48 L.Ed.2d 126, 44 U.S.L.W. 4609 (1976), that a defendant waives any objection to appearing for trial in prison garb if he makes no timely objection. The Court held that a trial judge has no obligation to raise the constitutional issue on his own motion if it involves a tactical aspect of the trial:

> "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney." *Id.* at ——, 96 S.Ct. at 1697, 44 U.S.L.W. at 4613.

The Court of Appeals for the Seventh Circuit has held that failure to object to a juror's handbook alleged to be prejudicial waives the objection for purposes of a post-conviction proceeding. *United States v. De Marie*, 261 F.2d 477 (7th Cir. 1958); *United States v. Mathison*, 256 F.2d 803 (7th Cir.), *cert. denied*, 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91 (1958).

■ On the basis of these cases, we conclude that petitioner waived any objection to being tried in an unfair atmosphere. The trial judge had no obligation to transfer or continue the case on his own motion, especially where it may have appeared that counsel deliberately chose to try the case at the time and place. Any other rule would force the trial judge to second-guess every strategic decision made by counsel before and during the course of the trial.

Moreover, counsel used only 14 of his allotted 21 peremptory challenges during selection of the jury. Although this fact alone is not sufficient to constitute waiver of objection to the jury's bias, it is an additional factor suggesting that either an impartial jury was selected or that the objection was waived. *Hayton v. Egeler*, 405 F.Supp. 1133, 1146 (E.D.Mich.1975).

■ The final two allegations of jury bias are advanced here for the first time. They are without merit. The Supreme Court has held that the exclusion of jurors opposed to capital punishment does not render the jury prejudiced on the issue of guilt. *Witherspoon v. Illinois*, 391 U.S. 510, 518, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). As for the prosecutor's informing the trial jury that the grand jury had heard witnesses, such comments should be avoided, since they are not based on evidence in the record and, further, it is of no concern to the trial jury how or why the grand jury acted as it did. However, the petitioner was not prejudiced by these remarks. They added nothing to what the jurors undoubtedly assumed anyway, since it is a matter of common knowledge that grand juries hear the testimony of witnesses. Any prejudice was further obviated by the trial judge's instruction to the jury that the indictment was not evidence.

■ Petitioner's last ground for habeas corpus is that the prosecution failed to disclose transcripts of petitioner's exculpatory statements while in custody. This contention, which was raised only at the trial and not renewed on appeal, is also without merit. Although a defendant is entitled to disclosure by the prosecution of information

helpful to his defense, our research has failed to uncover a single case holding that the prosecution must disclose information the defendant already knows—especially statements the defendant himself made.[6] Indeed, petitioner has not indicated how such disclosure would have been helpful. There is no assertion that his counsel lacked independent knowledge of any exculpatory matter in these statements.

Accordingly, the respondents' motion is granted and the petition for habeas corpus is denied.

---

**6.** *United States v. Arias*, 453 F.2d 641 (9th Cir. 1972), involved the most nearly apposite situation. In that case, the defendant asserted that he was denied due process by the government's failure to disclose a recording of an allegedly favorable telephone conversation between himself and a government agent. The court rejected this argument on the ground that the recording would not have been favorable. The court did not reach the question of whether such a recording would otherwise have been obtainable by the defendant.